ASBESTOS SHINGLE, SLATE & SHEATHING CO. et al. v. ASBESTOS SHINGLE CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1917.)

No. 2398.

PATENTS ☞313—SUIT FOR INFRINGEMENT—DISMISSAL ON MOTION.
   The dismissal of a bill for infringement of a concededly valid patent on motion based on complainants' answers to interrogatories propounded under equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv) held error, as not justified by such answers.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Asbestos Shingle, Slate & Sheathing Company and Hans Hatschek as executor against the Asbestos Shingle Company. Decree for defendant, and complainants appeal. Reversed.

This is a suit for alleged infringement of reissued patent No. 12594 to Ludwig Hatschek for improvements in the manufacture of imitation stone plates, slabs, or tiles, for the process as well as for the product. The process covered by his patent consists in mixing hydraulic cement with comminuted fibrous substance such as asbestos, in the presence of a large bulk of water, and the continued agitation of the mixture until there is formed a watery pulp capable of being worked through a cardboard machine, whereby the thin paste containing the cement and fiber is conveyed to and upon an endless rotating porous fabric through which the water flows off, leaving a layer of the intermixed

fiber and cement, which layer is wound upon a rotating cylinder, and, when the superposed layers have attained sufficient thickness, are removed from the roller, and cut and pressed into the desired shape, whereupon the layers, though apparent in the product, become thoroughly amalgamated, the cement in the embedded fiber sets and the product becomes hard, but somewhat elastic and tough, capable of being cut, sawed or nailed, specially adapting it for use as a substitute for wooden shingles, slate, tile, and the like.

The bill is in the usual form, asking injunctive relief against future infringement, and to it defendant filed answer, denying infringement, and alleging that its product is produced by a process shown in certain letters patent of the United States to one Norton, all applied for and issued more than three years after the date of the reissued patent, Norton's patents being Nos. 979,547, 979,548, 1,140,702, 1,140,703 and 1,140,704, and copies thereof are attached to the answer as exhibits. The answer further states that all of the alleged infringing product which the defendant is charged with having made and sold is like a specimen of such product which is made a part of the answer as "Defendant's Exhibit, Defendant's Product."

Norton's patent No. 979,547 is for a process for producing stone slabs suitable for shingles and the like, by thoroughly mixing together dry cement and finely divided asbestos, and in the dry state feeding it upon a belt which passes through rolls which compress the band of mixed dry materials, after which sufficient water is applied from above to saturate the moving band of mixed materials, which then passes through another set of compressing rolls, and is cut into the desired lengths and pressed into shapes as required. One of the other Norton patents is for the process of passing the dry material on to the belt, and the other Norton patents are for various machines for making the product in accordance with the said Norton processes.

After filing the answer, defendant, pursuant to Equity Rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), filed interrogatories to be answered under oath by plaintiffs, which are as follows:

"(1) By your allegation in the paragraph marked 'Fifth' in the bill of complaint herein that the defendant since the issuance of the plaintiffs' reissued letters patent in suit has manufactured according to the process of said letters patent, and has offered for sale, within the Northern District of Illinois, and elsewhere in the United States asbestos shingles of material containing, embodying, and employing the inventions claimed in said reissued letters patent, do you mean that the infringement consisted in the manufacture according to any of the processes set out in any of the copies of Norton patents marked and filed as exhibits herein (copies of which have been served on your solicitor) of asbestos shingles or other material, or in the sale of the product or products of such process or processes as represented by the specimen marked 'Defendant's Exhibit, Defendant's Product.'

"(2) If your answer to the first interrogatory herein is in the affirmative, then which process or processes set out in said Norton letters patent, or the manufacture or sale of what product, or products of said processes, infringe plaintiffs' reissued letters patent in suit.

"(3) If your answer to the first interrogatory herein is in the negative, then what other process or processes has defendant used, and what other product or products has it made and sold which you do charge to infringe the reissued letters patent in suit?

To these interrogatories plaintiffs filed the following answers:

"I. To interrogatory 1, yes, and in the use of the machines described in all of said patents in such manner and accompanied by such acts as to perform the process and produce the product of the said Hatschek patent in suit."

"II. In answer to interrogatory 2 all of the said patents and the products thereof, and the process and products resulting from the use of the machines and the performance of the acts set forth in the above answer I."

"Plaintiff does not intend by this bill of particulars to limit its rights to show at the trial performance of any and all acts in conjunction with said machines tending to show the use of the same in such manner as to practice the process and produce the product of the Hatschek patent in suit. Plaintiff

also reserves the right of applying at any time before trial to move for leave to modify its bill of particulars hereinbefore set forth."

Defendant then moved to dismiss the bill, and the court granted the motion and dismissed the bill for want of equity.

Clifton V. Edwards, of New York City, for appellants.

A. Parker Smith, of New York City, for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The procedure under equity rule 58, as followed in this case, was sanctioned by this court in Bronk v. Charles H. Scott Co., 211 Fed. 338, 128 C. C. A. 17, where it is said:

"If the decree cannot be sustained by an application of the law to the facts admitted by appellant in her bill and in her answers to appellee's interrogatories, the cause must be remanded for trial in due course. Undoubtedly the purpose of authorizing interrogatories was to enable the court to make a summary disposition of a cause by applying the law to an admitted state of facts; but, when the facts are not admitted, neither that rule nor any other warrants a summary disposition on affidavits or other untested showings by the party moving for the summary disposition, in lieu of proofs duly taken with proper opportunity for the adversary to cross-examine."

In the instant case no question arises of the validity of the patent in suit. It was the subject of litigation in Asbestos Shingle, Slate & Sheathing Co. v. Rock Fiber Mfg. Co. (D. C.) 217 Fed. 66, where Circuit Judge Baker, sitting in the District Court for the Northern District of Illinois, held it to be an invention "that is broad and meritorious"; and its validity is here conceded. The defense of noninfringement is the only one which this record raises. The bill broadly and aptly charges infringement, and is upon its face entirely sufficient. To dismiss it on motion would be unwarranted, unless from the answers to the interrogatories it so clearly appears that the defendant did not infringe the patent in suit so that the court can say that under no admissible evidence which might by any possibility exist can the conclusion of noninfringement be avoided.

If it were conceded that the process of the Norton patents and the product of the Norton machines produced through following such process do not and cannot infringe the Hatschek process and product, we are nevertheless first confronted with the inquiry whether from the answers to the interrogatories it does conclusively appear that the alleged infringing process follows exclusively the Norton patents, and that the product is the result solely of the Norton processes.

In its first interrogatory defendant asked, in substance, whether by its charge of infringement plaintiffs meant that the infringement consisted in the manufacture according to any of the processes set out in the Norton patent, or in the sale of products of such processes as represented by the specimen filed and marked "Defendant's Exhibit, Defendant's Product." To this interrogatory plaintiffs replied:

"Yes, and in the use of the machines described in all of said patents in such manner and accompanied by such acts as to perform the process and produce the product of the said Hatschek patent in suit."

If what follows the word "yes" were discarded, the answer then might be considered an unequivocal admission by plaintiffs that the alleged infringing process and product followed strictly the Norton patents. But by what right may we disregard this part of the answer? The entire answer is in effect a statement that, while the machines of the Norton patent were used in producing defendant's product, yet the machines were also used in such manner, accompanied by such acts, that the machines performed the processes and produced the product of the Hatschek patent. Whether in fact the machines can or cannot be so operated as to produce such result we do not know, and surely the court cannot, of its judicial knowledge, alone determine. Possibly on further application to the court plaintiffs might have been required to amplify their answer by stating the nature of the use of the machines, and of the accompanying acts which the answer charges result in the infringement of Hatschek's patent. But the record discloses no steps to require such further disclosure, and we must consider the answers as we find them, giving effect to each and every part thereof.

The answer to the second interrogatory does not afford further light. Plaintiffs are there asked to point out which, if any, of the processes or products of the Norton patents are claimed to infringe the reissued patent in suit, and the answer is, "All of them," and this answer again asserts infringement, as it is asserted in the first answer after the word "yes." The third interrogatory was not answered. From these answers it cannot be concluded that the general charge of infringement as made in the bill is limited to such infringement, if any, as would arise from a strict following of the teachings of the Norton patents, and by no possibility from a deviation therefrom in such manner as to involve infringement of Hatschek.

Under these circumstances there was error in dismissing the bill on motion, and the decree is therefore reversed, with direction to the District Court to deny the motion to dismiss the bill.